## H. GROTENKEMPER & CO. v. HILL & SMITH.

**Conditional Sale—Delivery of Property With Reservation.**

Delivery of whisky to a warehouseman, with an agreement to pay 60 cents per gallon and the vendor to have half the profits over and above that sum, is held to be a conditional sale, with an equitable interest.

**Same—Liability for Failure to Sell at Highest Market Price.**

The assignee of an interest in whisky stored in a warehouse, is entitled to receive the benefits of the highest market rate offered for the goods, on a bona fide bid, therefor.

**Same.**

A warehouseman, holding goods on a conditional sale, offered whisky on hand, on October 15, for $1.50 per gallon. Asked to send samples for inspection and, on receipt of same, the purchaser wired acceptance. The warehouseman reported a prior sale, ten days before, at $1.20 per gallon. Held, that he was liable to the assignee of the original vendor for the difference in price of the two offers.

**Factors and Brokers—Warehousemen.**

In the absence of an agreement or proof as to expenses, advances, interest, etc., a warehouseman can only charge for legitimate storage, and a commission for selling.

APPEAL FROM KENTON CIRCUIT COURT.

June 2, 1870.

OPINION OF THE COURT BY JUDGE WILLIAMS:

M. S. Dehoney, a manufacturer of whiskey at Warsaw, Kentucky, arranged with Hall & Long of Louisville, to advance him funds to carry on his business and they were to sell the whiskey, reimburse themselves, according to the stipulated terms, and pay over to him the surplus.

When Dehoney had some 154 barrels of whiskey manufactured *Hall & Long* determined to make no more advances, but required an adjustment of balances, whereupon Dehoney made an arrangement with Grotenkemper & Co., of Cincinnati, by which he was to ship the whiskey to them, or rather warehousemen in Covington,

and transfer to them the warehouse receipt, they paying him sixty cents on the gallon and he to have half the net profits over and above that sum; according to this arrangement Grotenkemper & Co. deducted a small account against Dehoney, the costs of transporting the whiskey, and gave their acceptance at 90 days time for the remainder, $3,400, which Dehoney at once endorsed to Hall & Long on an adjustment of their accounts; these transactions occurred in November, 1867.

Matters thus remained, with but little, if any, of the whiskey sold, until October 15, 1868, when a party representing the house of Ulman & Co., of Baltimore, authorized McDonald, who had the whiskey in store, to offer Grotenkemper & Co. $1.25 per gallon, cash, but which they declined saying they had been offered $1.40 per gallon and would not take less than $1.50. This being made known to the representative of the Baltimore house he requested a sample to be sent to their house and they would telegraph him, which he accordingly did, and on the morning of October 24, received from them a telegram accepting the offer at $1.50 per gallon, cash. McDonald immediately notified Grotenkemper & Co. who answered that they had ten days previously sold the whiskey to Boyle Miller & Co. at $1.20 per gallon, on time, when McDonald went to them and made the same offer; before accepting it however, they sent out one of their business men and on his return accepted the offer. This was possibly to consult Grotenkemper & Co. Dehoney having sold his interest in this whiskey to Hill & Smith they sued Grotenkemper & Co. for its entire proceeds, after deducting legitimate expense for advancing, selling, &c.

But to which Grotenkemper respond with charges for advancing every 90 days, interest on the money, warehouse expenses, &c., and the sale to Boyle, Miller & Co. at $1.20 per gallon, on October 26, 1868, and offer to adjust one half the net profits between sixty cents and $1.20 per gallon, after deducting their said account.

The evidence certainly tends strongly to prove a conditional sale by Dehoney to Grotenkemper & Co. at sixty cents per gallon, with a reserved interest of one half the net profits over that sum.

Boyle, Miller & Co. were in laboring circumstances, having been burnt out with a large stock destroyed, not secured by insurance, and owed Grotenkemper & Co. largely over $100,000,

they were therefore deeply interested in keeping Boyle, Miller & Co. afloat and in profitable business; when the first proposition to purchase said whiskey was made by McDonald for Ulman & Co., Grotenkemper did not pretend the whiskey had been sold, but offered then to sell at $1.50 per gallon; this was October 15, when notified on the 24th that Ulman & Co. would take it, their response that it had been sold ten days previously, that is on the 14th October, to Boyle, Miller & Co., cannot command confidence, especially as their answer, the note of Boyle, Miller & Co. for the whiskey and Grotenkemper & Co. bill of sale of it to them, all bear date October 26th. Wherefore the sale must be deemed to be made by Grotenkemper & Co. to Ulman & Co. for one dollar and fifty cents per gallon, cash, and they must respond to Hill & Smith for one-half of the profits at this price with interest thereon, after deducting legitimate expenses.

The transaction must be regarded as a sale by Dehoney to Grotenkemper & Co. at sixty cents per gallon, with a reserved interest of one half the net profits. But what arrangement was made as to the expense, rather what was to be regarded as expense, does not distinctly appear. In the absence of proof only the warehouse expense and at most a commission for selling could be allowed in such a transaction. Therefore Grotenkemper & Co. could charge either interest or commission for advancing they should make it appear that such was the contract, and as this does not appear in the case, the account should be adjusted on the basis of this opinion.

This judgment not being in conformity with this opinion, is reversed, with directions for further proceedings consistent herewith.

*Fisk, for appellants.*

*Stevenson & M., for appellees.*